1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10
11

TROY PALMER,

No.  2:24-cv-02969-EFB (SS)

12

Plaintiff,

13

v.

ORDER

14

FRANK BISIGNANO,
Commissioner of Social Security,

15
16

Defendant.

17

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

18

denying his application for Social Security disability benefits under 42 U.S.C. § 405(g).  ECF No.

19

1.  Pending before the court are the parties' cross-motions for summary judgment.  ECF Nos. 14,

20

17.[1]  For the reasons provided below, plaintiff's motion for summary judgment is denied, and the

21

Commissioner's motion for summary judgment is granted.

22

**I.    Background**

23

In December 2018 and September 2019, respectively, plaintiff applied for disability

24

insurance benefits (DBI) pursuant to Title II and for Supplemental Security Income (SSI) under

25

Title XVI of the Social Security Act, alleging disability beginning on June 23, 2018.

26

27

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all
proceedings in this action, including judgment, pursuant to 28 U.S.C. 636(c)(1).  ECF No. 21.

28

Administrative Record (AR) 308-09, 317-24. [2]  He alleged disability due to a crushing injury to his left foot.  AR 340.  His application was denied on May 8, 2019, AR 240-43, and his request for reconsideration was denied on August 15, 2019.  AR 247-52.  He requested a hearing, which was held on April 30, 2020, AR 176-211, and on June 16, 2020, the ALJ issued a decision finding plaintiff not disabled.  AR 159-74.  On May 12, 2022, the Appeals Council denied plaintiff's request for review.  AR 4.  Plaintiff filed the instant action, seeking judicial review under 42 U.S.C. § 405(g), on October 9, 2024.[3]  ECF No. 1.

**II.    Legal Standard**

**A.  The Disability Standard**

To qualify for disability insurance benefits under the Social Security Act, a claimant must show he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[4] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.

Step three: Does the claimant's impairment, or combination of impairments, meet

---

[2] Defendant lodged the administrative record on March 24, 2025.  ECF No. 10.

[3] The Appeals Council had granted plaintiff an extension to November 12, 2024 to seek judicial review of the agency's decision.  AR 4.  Defendant does not dispute that the instant action was timely filed.  *See* ECF No. 17.

[4] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

2

1    or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the
     claimant is disabled. If not, proceed to step four.
2
     Step four: Does the claimant possess the residual functional capacity ("RFC") to
3    perform his or her past relevant work? If so, the claimant is not disabled. If not,
     proceed to step five.
4
     Step five: Does the claimant's RFC, when considered with the claimant's age,
5    education, and work experience, allow him or her to adjust to other work that
     exists in significant numbers in the national economy? If so, the claimant is not
6    disabled. If not, the claimant is disabled.

7    *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006).  At each of these five

8    steps, "the ALJ is responsible for determining credibility, resolving conflicts in medical

9    testimony, and for resolving ambiguities.'" *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020).

10   (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).  In steps one through four, the

11   burden of proof is on the claimant.  *Ford*, 950 F.3d at 1148.  A claimant establishes a prima facie

12   case of qualifying disability once he has carried the burden of proof from step one through step

13   four.  *Ibid*.

14       Before making the step four determination, the ALJ first must determine the claimant's

15   RFC.  *Batson*, 359 F.3d at 1194; *see* 20 C.F.R. § 416.920(e).  The RFC is "the most [one] can still

16   do despite [his] limitations" and represents an assessment "based on all the relevant evidence."

17   20 C.F.R. § 404.1545(a)(1).  A determination of RFC is not a medical opinion, but a legal

18   decision that is expressly reserved for the Commissioner.  *See* 20 C.F.R. § 404.1527(d)(2) (RFC

19   is not a medical opinion); 20 C.F.R. § 404.1546(c) (identifying the ALJ as responsible for

20   determining RFC); *see also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[I]t is the

21   responsibility of the ALJ, not the claimant's physician, to determine residual functional

22   capacity.").

23       At step five, the burden shifts to the Commissioner, who must then show that there are a

24   significant number of jobs in the national economy that the claimant can perform given his RFC,

25   age, education, and work experience.  20 C.F.R. § 404.1520(g); *Batson*, 359 F.3d at 1194.  If the

26   claimant can perform other work in the national economy, then the claimant may not be found to

27   be disabled.  *Ibid.*

28   ////

                                                3

1          **B. Standard of Review**

2              Congress has provided that an individual may obtain judicial review of any final decision

3     of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g).  In

4     determining whether to reverse an ALJ's decision, the court reviews only those issues raised by

5     the party challenging the decision.  *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

6     The court must find the Commissioner's decision conclusive if it is supported by substantial

7     evidence.  42 U.S.C. § 405(g); *Biestek v. Berryhill*, 587 U.S. 97, 99 (2019).  "Substantial evidence

8     is relevant evidence which, considering the record as a whole, a reasonable person might accept

9     as adequate to support a conclusion." *Thomas v. Barnhart (Thomas)*, 278 F.3d 947, 954 (9th Cir.

10    2002) (quoting *Flaten v. Sec'y of Health & Human Servs*., 44 F.3d 1453, 1457 (9th Cir. 1995));

11    *see also Dickinson v. Zurko*, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence

12    standard to the deferential clearly-erroneous standard).  "[T]he threshold for such evidentiary

13    sufficiency is not high." *Biestek*, 587 U.S. at 103.  Rather, "[s]ubstantial evidence means more

14    than a scintilla, but less than a preponderance; it is an extremely deferential standard." *Thomas v.*

15    *CalPortland Co. (CalPortland)*, 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and

16    citations omitted); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).  Even if the

17    ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless, *Stout*,

18    454 F.3d at 1055-56, and the burden of showing that an error is not harmless "normally falls upon

19    the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

20             In conducting its analysis, the "reviewing court must consider the entire record as a whole

21    and may not affirm simply by isolating a specific quantum of supporting evidence." *Hill v.*

22    *Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880,

23    882 (9th Cir. 2006)).  The court may not affirm the ALJ on a ground upon which she did not rely;

24    rather, the court may review only the reasons stated by the ALJ in her decision.  *Orn v. Astrue*,

25    495 F.3d 625, 630 (9th Cir. 2007); *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir.

26    2003).  Further, if the evidence "is susceptible to more than one rational interpretation, it is the

27    ALJ's conclusion that must be upheld." *Ford*, 950 F.3d at 1154 (quoting *Burch v. Barnhart*, 400

28    F.3d 676, 679 (9th Cir. 2005)).

1    **III.    The ALJ's Findings of Fact and Conclusions of Law**

2         In his June 16, 2020 decision, the ALJ found plaintiff not disabled and made the following

3    findings:

4       1.    The claimant meets the insured status requirements of the Social Security Act
5          through March 31, 2023.

6       2.    The claimant has not engaged in substantial gainful activity since June 23,
      2018, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).
7

8       3.    The claimant has the following severe impairments: acquired absence of the
      left foot, obesity, and history of stroke (20 CF 404.1520(c) and 416.920(c)).
9

10      4.    The claimant does not have an impairment or combination of impairments that
      met or medically equaled the severity of one of the listed impairments in 20
11         CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525,
      404.1526, 416.920(d), 416.925 and 416.926).
12

13      5.    After careful consideration of the entire record, I find that the claimant has the
      residual functional capacity to perform light work as defined in 20 CFR
14         404.1567(b) and 416.967(b), as the claimant is able to lift and carry twenty
      pounds occasionally and ten pounds frequently and sit for six hours in an
15         eight-hour workday. However, the claimant can only stand and walk for four
      hours in an eight-hour workday. The claimant must use a cane for distance
16         ambulation and on uneven terrain. The claimant can frequently climb ramps
      and stairs. The claimant can never climb ladders, ropes, and scaffolds. The
17         claimant can occasionally balance. The claimant can frequently stoop, kneel,
      crouch, and crawl.
18

19      6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565
      and 416.965).
20

21      7.    The claimant was born on July 2, 1968 and was 50 years old, which is defined
      as a younger individual age 18-49, on the alleged disability onset date. The
22         claimant subsequently changed age categories to closely approaching
      advanced age (20 CFR 404.1563 and 416.963).
23

24      8.    The claimant has at least a high school education and is able to communicate
      in English (20 CFR 404.1564 and 416.964).
25

26      9.    Transferability of job skills is not material to the determination of disability
      because using the Medical-Vocational Rules as a framework supports a
27         finding that the claimant is "not disabled," whether or not the claimant has
      transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P,
      Appendix 2).
28

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that existed in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969 and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 23, 2018 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 156-69.

## IV.    Analysis

Plaintiff raises four issues on review.  First, he argues that the ALJ's determination at step two lacked substantial evidence insofar as the ALJ found that plaintiff's alleged mental impairments were not medically determinable.  ECF No. 14 at 5-12.  Second, he argues that the ALJ's RFC determination was without substantial evidence due to the ALJ's unreasonable assessment of the evidence provided by third-party witness Julli Conde.  ECF No. 14 at 12-14.  Third, plaintiff argues that the RFC determination lacked substantial evidence because the ALJ unreasonably discounted his testimony.  ECF No. 14 at 14-15.  Finally, plaintiff argues that the RFC determination lacked substantial evidence because the ALJ's assessment of the medical opinion evidence was unreasonable.  ECF No. 14 at 15-19.  For the reasons set forth plaintiff's arguments fail.

### A.  Step Two Determination

Plaintiff first argues that the agency's decision should be reversed because the ALJ's determination at step two lacked substantial evidence, insofar as the ALJ found that plaintiff's allegations of mental disability were not medically determinable.  ECF No. 14 at 5-12.  Plaintiff has not shown that reversal is warranted.

At step two, the ALJ must determine whether the claimant has made an adequate showing that he had severe impairments during the period for which he seeks disability benefits.  20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c).  To meet this standard, the claimant need only make a "de minimus" showing, *Glanden v. Kijakazi*, 86 F.4th 838, 843 (9th Cir. 2023), that he has a medically determinable impairment and that that impairment is severe.  *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).  Within the meaning of the regulations, a "medically determinable

impairment" is "an impairment that results from anatomical, physiological, or psychological

abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic

techniques." 42 U.S.C.A. § 423.  To prove the existence of a medically determinable impairment,

the claimant must show the existence of both symptoms—i.e., the claimant's "own perception or

description of the impact of his or her physical or mental impairment(s)—and signs—i.e., "an

anatomical, physiological, or psychological abnormality that can be shown by medically

acceptable clinical diagnostic techniques"—of the impairment.  *Ukolov v. Barnhart*, 420 F.3d

1002, 1005 (9th Cir. 2005) (citing SSR 96–4p, 1996 WL 374187 (July 2, 1996)).  "[U]nder no

circumstances may the existence of an impairment be established on the basis of symptoms

alone." *Ibid.* (citing SSR 96–4p, 1996 WL 374187, at *1, and 20 C.F.R. §§ 404.1508, 416.908).

Rather, "regardless of how many symptoms an individual alleges, or how genuine the individual's

complaints may appear to be, the existence of a medically determinable physical or mental

impairment cannot be established in the absence of objective medical abnormalities; i.e., medical

signs and laboratory findings" and thus "[i]n claims in which there are no medical signs or

laboratory findings to substantiate the existence of a medically determinable physical or mental

impairment, the individual must be found not disabled at step 2 of the sequential evaluation

process." *Ibid.* (citing SSR 96–4p, 1996 WL 374187, at *1-2).

      Here, the ALJ found at step two that plaintiff had the medically determinable, severe

impairments of acquired absence of his left foot, obesity, and history of stroke, but that plaintiff's

claimed mental impairments were not medically determinable impairments due to a lack of

objective evidence.  AR 162.  As the basis for this determination, the ALJ found:

> A medically determinable impairment may not be established solely based on
> symptoms alone or on the claimant's allegations regarding symptomatology. The
> objective medical evidence does not demonstrate sufficient medical signs or
> laboratory findings pertaining to mental impairments (20 CFR 404.1529(b) and
> 416.929(b)).
>
> When making this finding, I considered the opinion of the State agency
> psychological consultant. In April 2109, psychological consultant, Brian
> McIntyre, Ph.D., found there was no evidence to establish a mental health
> diagnosis and the claimant has no medically determinable mental impairment
> (Exhibit 2A). The psychological consultant is a non-treating, non-examining
> medical source. However, this opinion is supported by detailed notes of a

1
2
3

thorough review of the medical record as a whole and based on the psychological consultant's comprehensive understanding of agency rules and regulations. I find that this opinion is consistent with the record as a whole showing no diagnosis of a mental impairment. As such, I find this opinion persuasive.

4

AR 162.

5

Plaintiff argues that the ALJ erred in making these findings.  According to the plaintiff, he

6

presented a colorable claim of mental impairment and the ALJ should have developed the record

7

further rather than finding the alleged mental impairments not medically determinable.  ECF No.

8

14 at 5-11.  To the extent plaintiff contends that the record before the ALJ sufficed to show that

9

plaintiff had a medically-determinable mental impairment, *see* ECF No. 14 at 11, the record

10

contains substantial evidence to support the ALJ's contrary determination.  The ALJ based his

11

determination in part on the opinion of Dr. McIntyre who had, in turn, based his opinion on

12

plaintiff's medical records through April 2019.  AR 220.  Dr. McIntyre stated that although

13

plaintiff had reported feelings of "anxiety, emotional withdrawal, isolation, diff[iculty]

14

concentrating, and memory loss," none of plaintiff's medical record evidence contained

15

indication of these, or any other, mental health impairments. *Ibid*.; *see* AR 345.  Dr. McIntyre

16

observed that plaintiff's records indicated he had not been prescribed any medications for

17

psychiatric issues, nor had he been referred to any mental health specialists by any of his treating

18

clinicians.  AR 220.  In finding Dr. McIntyre's opinion credible, the ALJ found that it was based

19

on detailed, accurate notes deriving from the medical record evidence and was consistent with the

20

ALJ's own review of the record, which revealed no diagnosis of mental impairment.  AR 162.  It

21

was apt for the ALJ to consider these features when assessing the weight to give Dr. McIntyre's

22

opinion. *See, e.g., Glanden v. Kijakazi*, 86 F.4th 838, 846 (9th Cir. 2023); *Webb v. Barnhart*, 433

23

F.3d 683, 688 (9th Cir. 2005).  The court's own review of the record confirms the accuracy of the

24

ALJ's finding that the medical record contains no diagnosis of a mental impairment, *see* AR 162,

25

and of Dr. McIntyre's observations that the record contains no indication plaintiff was prescribed

26

medication for mental health problems or that he had been referred by a health care provider for

27

mental health treatment. *See* AR 220; *see generally* AR 345, 411-730.  The record, therefore,

28

contains substantial evidence to support the ALJ's finding on this issue. *See Ukolov*, 420 F.3d at

1   1005-06; *Webb*, 433 F.3d at 686-87.

2          Plaintiff also argues that the record before the ALJ contained objective evidence of mental

3   impairment so as to meet his burden to show that he displayed signs, *see Ukolov*, 420 F.3d at

4   1005, of a mental impairment, satisfying his minimal step-two burden and thereby rendering

5   without substantial evidence the ALJ's findings at step two.  ECF No. 14 at 9.  Specifically,

6   plaintiff argues that the medical record demonstrated that he had suffered a stroke, with his CT

7   scan showing "abnormalities."  ECF No. 14 at 9-10.  He also argues that, "[c]ognitive impairment

8   is confirmed by Mr. Palmer, his third party, and treating Dr. Cosenza" and "Dr. Cosenza adds

9   diagnoses of depression and anxiety."  ECF No. 14 at 10.  Some of these representations of the

10  record are misleading, and those that are accurate do not constitute "medically acceptable clinical

11  diagnostic techniques" that "show[]" a "psychological abnormality" so as to impugn the ALJ's

12  finding.  *See Ukolov*, 420 F.3d at 1005.

13         First, the record does not show that Dr. Cosenza "confirmed" any diagnoses indicating

14  cognitive impairment, nor that he "add[ed] diagnoses of depression and anxiety" for plaintiff.  *See*

15  ECF No. 14 at 10.  The only portion of the medical record before the ALJ that was apparently

16  authored by, or reflected the work of, Dr. Cosenza is a January 28, 2020 Medical Source

17  Statement form that he completed.  AR 595-98.  In it, the only diagnoses he identified were left

18  mid-foot amputation with phantom nerve pain, which are consistent with Dr. Cosenza's role as

19  one of plaintiff's treating podiatrists.[5]  AR 596.  He did not indicate plaintiff was or had ever been

20  diagnosed or with depression, anxiety, or any form of cognitive impairment.  *See ibid*.  On the

21  same form, Dr. Cosenza identified "clinical findings and objective signs" as only relating to the

22  physical impairments from plaintiff's foot injury: TTP of the left stump, difficulty walking

23  normally, and abnormal gait.  *Ibid*.  He did not indicate any "objective signs" of depression,

24  ─────────────────────

25         [5] The Administrative Record does not indicate what Dr. Cosenza's specialty or
    qualifications are, *see generally* AR, but defendant represents that Dr. Cosenza is a podiatrist,
26  specifically a Doctor of Podiatric Medicine, ECF No. 17 at 5, which plaintiff does not dispute.
    ECF No. 20.  This representation is consistent with the Administrative Record, as the only portion
27  of the Administrative Record relating to Dr. Cosenza's treatment or assessment of plaintiff is his
    Medical Source Statement, in which he discusses, almost exclusively, plaintiff's foot injury and
28  recovery from same.  *See* AR 596-98.

anxiety, or any form of cognitive impairment. *See ibid*.  Instead, plaintiff relies on a different

portion of the form, wherein Dr. Cosenza checked off that "psychological conditions affecting

[plaintiff's] physical condition" were depression, anxiety, and "psychological factors affecting

physical condition."  AR 598.  In the same form, he also reported that plaintiff's "pain or other

symptoms" were frequently severe enough to affect plaintiff's attention and concentration. *Ibid*.

Given the totality of Dr. Cosenza's responses on the form, however, these particular responses did

not purport to reflect diagnoses or objective signs of plaintiff's mental or cognitive impairments,

nor do they indicate that Dr. Cosenza identified any medically-objective signs that plaintiff

experienced any such impairments. *See Ukolov*, 420 F.3d at 1005.  In light of Dr. Cosenza's

failure to include depression, anxiety, or any form of cognitive impairment in the sections of the

form where he identified diagnoses and objective signs of possible other disorders, "the ALJ

committed no legal error" in failing to find plaintiff had a medically determinable mental

impairment on the basis of the contents of Dr. Conseza's form. *See id*. at 1005-06.

The record also does not support plaintiff's representation that his May 29, 2019 CT scan,

stroke diagnosis, and records from his June 14, 2019 follow-up examination, singly or together,

constitute a sign of "mental impairment" so as to render without substantial evidence the ALJ's

determination that plaintiff had not made a colorable showing that he had a mental impairment.

*See ECF No. 14 at 9-10.  The record indicates that on May 29, 2019, plaintiff was admitted to

Sierra Nevada Memorial Hospital with left-side weakness and was assessed for a stroke,

including undergoing a CT scan.  AR 564-67.  The CT revealed a slightly elongated area of

hyperdensity and plaintiff was diagnosed with a stroke. *Ibid*.  In follow-up visits one month and

five months later, his clinicians described plaintiff as having a "[h]istory of CVA with residual

deficit (Unspecified sequelae of cerebral infarction, I69.30)."  AR 602-04.  Plaintiff argues that

all of these facts constitute signs that plaintiff had a medically-determinable "mental impairment,"

which plaintiff implies was a "cognitive impairment."  ECF No. 14 at 9-10.  None of the records

cited, however, suggest that any clinician found, diagnosed, or referred plaintiff for treatment for

any form of cognitive impairment, resultant from plaintiff's stroke or otherwise, nor that they

identified cognitive impairment as being a residual deficit of plaintiff's stroke. *See AR 564-607*.

1    The possibility that plaintiff's stroke may have impaired his cognition does not suffice to meet

2    plaintiff's modest burden at step two to show that he actually was so impaired.  *See Ukolov*, 420

3    F.3d at 1004-07.

4          Plaintiff also has not shown that the ALJ's determination lacked substantial evidence

5    because it failed to account for statements by a third-party, nonmedical source and by plaintiff

6    about his asserted cognitive impairments.  Plaintiff relies on a third-party statement in which the

7    author reported that plaintiff did not go out with friends as much since the onset of his disability,

8    that he is "hit or miss" in following oral instructions, and he sometimes needs help or

9    encouragement to complete house- or yardwork.  *See* ECF No. 14 at 8-9; AR 349-56.  It is not

10   apparent that any of these observations relate to or purport to relate to any psychiatric or cognitive

11   deficits in plaintiff.  Even if they do, they do not constitute "signs" of a medically determinable

12   impairment within the meaning of the regulations, as they did not describe "medically acceptable

13   clinical and laboratory diagnostic techniques" for demonstrating the existence of depression,

14   anxiety, cognitive impairment, nor any other psychological abnormality.  *See* 42 U.S.C.A. § 423;

15   *see generally Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (describing third-party witness

16   statements as evidence of the "claimant's *symptoms* and daily activities") (emphasis added),

17   *abrogated on other grounds by* 20 C.F.R. § 404.1520c(d).

18         The same is true of plaintiff's statements describing his own experience of his symptoms.

19   In his briefing, plaintiff represents that evidence of his cognitive impairments exists in his

20   responses in a March 30, 2019 function report form.  ECF No. 14 at 8-10.  Specifically, plaintiff

21   argues that his cognitive impairment is evidenced by his response that, since his illness, injury, or

22   condition began, he "do[es]n't go out as much"; that his illness, injury, or condition affected his

23   memory and ability to complete tasks; and that his ability to follow oral instructions was "fair."

24   *See* ECF No. 14 at 8-9 (citing AR 365).  As with the third-party report evidence, for several of

25   these statements, it is not apparent that they were even intended to communicate cognitive

26   difficulties, given that elsewhere throughout the form plaintiff's responses appear to plainly refer

27   to mobility difficulties and pain resultant from his foot injury.  *See* AR 360-67.  In any event,

28   even if these statements should be properly understood as relaying symptoms of cognitive

11

impairment, they could not constitute objective signs of a medically determinable impairment. *See Ukolov*, 420 F.3d 1005; SSR 96–4p, 1996 WL 374187 (July 2, 1996)); 42 U.S.C.A. § 423. As such, the ALJ's decision was not lacking in substantial evidence insofar as he concluded that plaintiff's own statements and third-party report did not suffice to establish signs of a medically determinable mental health or cognitive impairment. *See ibid.* ("[U]nder no circumstances may the existence of an impairment be established on the basis of symptoms alone."); *see generally* 42 U.S.C.A. § 423.

Plaintiff argues that, even if the evidence did not suffice to meet his burden to show that he had a medically determinable impairment, he made enough of a showing to require the ALJ to develop evidence on this question. ECF No. 14 at 6-8, 10-11. Plaintiff has not shown that the ALJ committed error in failing to sua sponte develop the record to determine if plaintiff had a medically determinable mental impairment. To be sure, in a social security case the ALJ "has an independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting *Smolen*, 80 F.3d at 1288, and *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir.1983)). This duty, however, is only triggered where the record is ambiguous or where the ALJ finds that the record is inadequate to allow for proper evaluation of the evidence. *Smolen*, 80 F.3d at 1288; *Webb*, 433 F.3d at 686-87. Here, plaintiff has not shown the ALJ erred by failing to perceive any ambiguity that would have triggered such a duty. None of the objective medical evidence in the record before the ALJ indicated any medical provider identified plaintiff to have diagnoses or signs of depression, anxiety, or any form of cognitive impairment. The record indicated no treatment for, prescriptions relevant to, or referrals for specialized treatment for any such impairments. Even much of the subjective evidence on which plaintiff relies in this proceeding only obliquely suggests cognitive dysfunction, depression, or anxiety. Given the record that was before the ALJ, he committed no error in finding that the plaintiff simply had not met his burden at step two to show that he possessed a medically determinable mental impairment. *See Ukolov*, 420 F.3d at 1006; *see, e.g., Webb*, 433 F.3d at 686-87; *Haley v. Massanari*, 258 F.3d 742, 749 (8th Cir. 2001).

1    For all of these reasons, plaintiff's motion is denied and defendant's is granted on this

2    issue.

3    **B.  RFC Determination**

4    The remaining three issues allege errors in the ALJ's RFC determination.  Plaintiff argues

5    that the RFC lacks substantial evidence because the ALJ unreasonably failed to credit portions of

6    plaintiff's testimony; the ALJ unreasonably discounted the evidence by third-party witness Julli

7    Condi; and the ALJ erred in the weight he gave to various items of medical opinion evidence.

8    ECF No. 14 at 12-19.  Plaintiff fails to prove his entitlement to relief on any of these grounds, for

9    the reasons set forth below.

10    **1.  Evaluation of Plaintiff's Testimony**

11    Plaintiff argues that the ALJ's RFC determination lacked substantial evidence insofar as

12    the ALJ did not fully credit plaintiff's allegations.  ECF No. 14 at 14-15.  For the reasons set forth

13    below, plaintiff's motion is denied and defendant's is granted on this issue.

14    As a threshold matter, plaintiff's claim for relief must fail because he has made no

15    showing of prejudice; instead, he argues that the ALJ erred in his manner of evaluating plaintiff's

16    allegations and, ergo, "that cannot be harmless error."  ECF No. 14 at 15.  This does not suffice to

17    meet plaintiff's burden to show prejudice from the asserted error, i.e., in what way the RFC

18    determination would have differed, and been more favorable to a disability finding, had the ALJ

19    not committed the error that plaintiff asserts.  *See Shinseki*, 556 U.S. at 409; *Molina v. Astrue*, 674

20    F.3d 1104, 1115 (9th Cir. 2012); *see also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685,

21    692 n.2 (9th Cir. 2009) (plaintiff "does not detail what other physical limitations follow from the

22    evidence of his knee and should injuries, besides the limitations already listed in the RFC. We

23    reject any invitation to find that the ALJ failed to account for [plaintiff's] injuries in some

24    unspecified way.").  Here, plaintiff had made several allegations concerning the strength, severity,

25    and disabling affect of his symptoms, *see* AR 176-211, 339-46, 360-71, 452-54, and the ALJ

26    credited some of these, partially credited others, and discredited others.  *See* AR 163-67.  In his

27    motion, plaintiff does not address which aspects of the RFC lack substantial evidence due to the

28    ALJ's mistaken approach to evaluating plaintiff's statements.  *See* ECF No. 14 at 15-15; ECF No.

20 at 7-10.  By so failing, plaintiff fails to meet his burden to show that any error by the ALJ was not harmless to the RFC determination and, ultimately, his finding of non-disability.  *See Molina*, 674 F.3d at 1115.

Nonetheless, the record does not demonstrate that the ALJ erred in his analysis of plaintiff's testimony and other statements.  Plaintiff first argues that the ALJ's partial rejection of plaintiff's allegations was erroneous because it lacked requisite specificity.  ECF No. 14 at 14-15; ECF No. 20 at 7.  When determining a plaintiff's residual functioning capacity, the ALJ must consider the plaintiff's testimony describing their symptoms and engage in a two-step inquiry to determine whether such testimony is credible.  *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Lingenfelter*, 504 F.3d at 1035-36 (quoting *Bunnell v. Sullivan,* 947 F.2d 341, 344 (9th Cir.1991) (en banc) (internal quotation marks omitted)).  If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."  *Garrison*, 759 F.3d at 1014-15 (quoting *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996)); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *see also Smartt v. Kijakazi*, 53 F.4th 489, 497 (9th Cir. 2022); *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 883 (9th Cir. 2006).  The specificity requirement is met where the ALJ's "findings [are] sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony," *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002), and where "a reviewing court [is] not . . . forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain."  *Bunnell,* 947 F.2d at 345-46; *see, e.g., Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996), *superseded by statute on other grounds*.

Here, plaintiff fails to show that the ALJ's partial rejection of plaintiff's testimony was erroneous for lacking requisite specificity.  In determining plaintiff's RFC, the ALJ credited that plaintiff had an acquired absence of the left foot, a history of stroke, and obesity.  AR 164-67.

14

1    The ALJ summarized that, at various points including in his hearing testimony, plaintiff had
2    asserted that these conditions resulted in "a number of limitations, some of which involve lifting,
3    squatting, bending, standing, walking, sitting, kneeling, stair climbing, reaching, using his left
4    hand, hearing, seeing, remembering, concentrating, and completing tasks," as well as difficulty
5    walking and balancing.  AR 164 (citing Hearing Testimony & Exhibits 1E, 4E, 14E).  Over the
6    subsequent three pages of his opinion, the ALJ then explained why he concluded that plaintiff's
7    "medically determinable impairments could reasonably be expected to cause the alleged
8    symptoms; however, the claimant's statements concerning the intensity, persistence and limiting
9    effects of these symptoms are not entirely consistent with the medical evidence and other
10   evidence in the record," AR 167, such that the evidence did not "support the existence of
11   limitations greater than those" reflected in the RFC statement.  AR 164.  Within that analysis, the
12   ALJ discussed conflicts between plaintiff's claimed symptoms and plaintiff's own reports of the
13   activities with which he engages regularly.  AR 164 (citing Ex. 4E)).  The ALJ detailed clinical
14   findings by plaintiff's treating physician, in June 2019 and October 2019, that appeared to
15   contradict plaintiff's reports of the limiting effects of his symptoms.  AR 164 (citing Ex. 9F at 2,
16   4).  The ALJ discussed at length the medical opinion evidence and prior administrative findings;
17   in discussing each item of such evidence, the ALJ detailed the claimed limitations implicated by
18   the opinion or prior finding, the weight that the ALJ would give the opinion or prior finding based
19   on its supportability and consistency, and the extent to which it corroborated or failed to
20   corroborate plaintiff's claimed limitations.  AR 166-67.  Finally, the ALJ observed that plaintiff's
21   successful pain management with home remedies, CBD, and THC in lieu of prescribed
22   medication militated toward a finding that his pain is not as debilitating as he had alleged.  AR
23   167.
24        Taken together, these findings satisfy the requirement that the ALJ explain "specific[ly]"
25   why he rejected in part plaintiff's testimony and other statements describing the intensity,
26   duration, and limiting effect of his symptoms.  *See Garrison*, 759 F.3d at 1014-15.  In cases
27   where this standard has not been met, the ALJ's rejection of the claimant's testimony or
28   allegations has been far vaguer, leaving the reviewing court with little explanation for the

rejection.  In *Lester*, 81 F.3d at 834, for example, the Court of Appeals held that ALJ had failed to adequately specify the reason for partially discrediting plaintiff's allegations, where the ALJ had simply made a "general statement that the claimant's testimony was unbelievable" but "did not provide any specific reasons for her disbelief other than a lack of objective evidence."  *See also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (holding that ALJ was not sufficiently specific in partially rejecting claimant's allegations of symptoms where ALJ simply "repeated that there was little or nothing in the record to support" the allegations); *Varney v. Sec'y of Health & Hum. Servs.*, 846 F.2d 581, 584 (9th Cir.), *on reh'g,* 859 F.2d 1396 (9th Cir. 1988) (same, where ALJ simply stated in one sentence that plaintiff's allegations of her symptoms were unsupported by the objective medical evidence).  Here, the ALJ's discussion was specific: it identified the particular symptoms plaintiff had alleged at various points, *see* AR 176-211, 339-46, 360-71, 452-54; *see also* AR 164 (citing same), and then discussed, seriatim, evidence of plaintiff's reported regular activities; clinical findings; and medical opinions and prior administrative findings that related to those claimed symptoms.  AR 164-67.  This analysis is sufficiently specific to enable the reviewing court to meaningfully review the ALJ's RFC determination and underlying findings, *see Bunnell,* 947 F.2d at 345-46, and sufficiently indicates that the ALJ "did not arbitrarily discredit [plaintiff's] testimony."  *See Barnhart*, 278 F.3d at 958.

       Plaintiff next argues that the ALJ's partial rejection of his testimony and allegations was error because the objective medical evidence did not, in fact, contradict plaintiff's allegations, but rather merely reflects an absence of substantiation for them.  ECF No. 14 at 14-15; ECF No. 20 at 7-11.  Plaintiff has not shown error.  As noted, the ALJ may reject a claimant's testimony about the severity of his symptoms of an impairment only with "clear and convincing reasons for doing so."  *See Garrison*, 759 F.3d at 1014-15.  Courts have routinely held that this standard is met where the ALJ identifies evidence of plaintiff's treatment history, medication history, and reports of daily functioning that contradict plaintiff's claims describing his impairments.  *See, e.g.*, *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001) (affirming an ALJ's rejection of claimant's allegations of limiting effects of multiple impairments, in light of claimant's treatment records, medication history, and reports of daily functioning); *see also Chaudhry v. Astrue*, 688

F.3d 661, 672-73 (9th Cir. 2012) (holding ALJ was reasonable in relying on objective medical evidence of claimant's functioning over claimant's subjective testimony); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (holding ALJ reasonably relied on physician's assessment of claimant's lifting capability in lieu of claimant's self-report, as "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony"). Here, plaintiff's argument that the evidence identified by the ALJ did not contradict plaintiff's testimony and allegations does not accurately describe the record. Rather, the evidence relied on by the ALJ tended to show that plaintiff's assessments by clinicians, reports to clinicians, choices regarding pain management, and activities of daily living were, in some ways, inconsistent with particular limitations on his mobility and attention that plaintiff alleged disabled him. *See* AR 164-68. The ALJ's description of the record in these respects was accurate and his approach was entirely appropriate under governing authority. *See, e.g.*, *Osenbrock*, 240 F.3d 1157. Plaintiff fails to show any error in fact, logic, or law to in the ALJ's assessment of plaintiff's allegations and testimony, nor that the RFC lacked substantial evidence insofar as it was premised on the ALJ's partial rejection of plaintiff's statements and testimony. As such, and because plaintiff has also failed to show any prejudice from the claimed error, plaintiff's motion is denied and defendant's is granted on this issue.

### 2. Evaluation of Third-Party Witness Statement

Plaintiff also argues that the ALJ's RFC determination lacked substantial evidence insofar as the ALJ unreasonably discounted some of the statements contained in the third-party function report authored by Julli Conde. ECF No. 14 at 12-14. Plaintiff has not met his burden to show that the RFC lacks substantial evidence in this regard.

Ms. Conde, plaintiff's fiancée, submitted a Third-Party Function Report dated March 30, 2019, in which she described her observations of plaintiff's functioning. AR 349-56. She reported, inter alia, that plaintiff had trouble completing projects, experienced swelling in his feet, could not stand long enough to cook, could only walk half a block before needing to rest, is "hit or miss depending on the day" in his following oral instructions, experiences phantom pain that disturbs his sleep, and at times loses his balance due to difficulty walking. *See* ECF No. 14 at 14

1  (citing AR 349-51, 354, 356).  In assessing plaintiff's RFC, the ALJ credited Ms. Conde's report

2  as "generally supportive of the claimant's allegations."  AR 164.  Nonetheless, the ALJ found,

3  Ms. Conde's

> statement does not establish that the claimant is disabled, since she is not
> medically trained to make exacting observations as to dates, frequencies, types
> and degrees of medical signs and symptoms, or of the frequency or intensity of
> unusual moods or mannerisms, the accuracy of the information provided was
> questionable. Moreover, like the claimant's allegations, the statement was simply
> not consistent with the preponderance of the opinions and observations by
> medical doctors in this case

8  *Ibid*.

9       Plaintiff argues these findings were erroneous, arguing that the consistencies between Ms.

10  Conde's statements and plaintiff's were a reason to find plaintiff's allegations credible.  ECF No.

11  14 at 13.  Plaintiff further argues that, to the extent Ms. Conde's statements conflicted with the

12  other evidence in the record, the ALJ erred in giving greater weight to the other evidence.  *Id*. at

13  12-13.  Plaintiff fails to show that the ALJ erred in his manner of assessing Ms. Conde's

14  statements nor in the weight he gave those statements when determining plaintiff's RFC.  The

15  ALJ observed that some of Ms. Conde's descriptions were similar to the plaintiff's in that they

16  described, as relevant here, limitations on plaintiff's ability to walk, balance when standing, and

17  follow instructions that were all more restrictive than what was ultimately included in the RFC.

18  *See* AR 163.  The ALJ was apt, however, in considering the degree to which Ms. Conde's

19  statements accorded not just with plaintiff's statements and testimony, but with all of the

20  evidence.  *See, e.g., Molina*, 674 F.3d at 1114-15.  Due to the similarity between Ms. Conde's

21  statements describing plaintiff's functioning and the allegations and testimony of plaintiff, it was

22  sufficient for the ALJ to state that he found her statements partially unpersuasive for the same

23  reasons he had found plaintiff's, viz., to the extent they conflicted with the medical opinion

24  evidence, plaintiff's medication and treatment history, and plaintiff's activities of daily life.  *See*

25  *Molina,* 674 F.3d at 1114 (explaining that, "if the ALJ gives germane reasons for rejecting

26  testimony by one witness, the ALJ need only point to those reasons when rejecting similar

27  testimony by a different witness"); *Valentine*, 574 F.3d at 694 (holding that, because "the ALJ

28

provided clear and convincing reasons for rejecting [plaintiff's] own subjective complaints, and because [the third-party witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony"). [6]  Plaintiff therefore has not shown that the ALJ's RFC determination lacked substantial evidence insofar as it was premised on the partial discounting of the statements of Ms. Conde.  *See Molina,* 674 F.3d at 1122.  Accordingly, plaintiff's motion is denied and defendant's is granted on this issue.

### 3.  Evaluation of Medical Opinion Evidence and Prior Administrative Findings

Finally, plaintiff argues that the RFC lacks substantial evidence insofar as it was premised on errors the ALJ committed in evaluating the opinion evidence offered by Drs. Jackson, Wolterbeek, and Cosenza.  ECF No. 14 at 15-19.  Plaintiff's arguments are meritless.

### a.  Dr. Jackson

As part of the ALJ's RFC analysis, he found persuasive the April 2019 opinion of Dr. W. Jackson that plaintiff was "capable of a range of light work with reduced standing and/or walking and postural limitations," including that plaintiff "might use a cane for distance ambulation and uneven terrain."  AR 166 (citing Ex. 2A).  The ALJ noted that Dr. Jackson was a non-treating, non-examining medical source, but found that his opinion was persuasive because it was "supported by detailed notes of a thorough review of the medical record as a whole and based on the medical consultant's comprehensive understanding of agency rules and regulations" and because it was "consistent with the record of evidence including physical examinations."  *Id*. (citing Ex. 2F at 12, 14).

Plaintiff first argues that the ALJ's analysis is error because it is impermissibly vague.

---

[6] Plaintiff argues that the ALJ must articulate reasons germane to each witness if rejecting or partially rejecting the opinions of a claimant's functioning offered by a third party.  ECF No. 14 at 12 (citing *Nguyen v. Charter*, 100 F.3d 1462 (9th Cir. 1996)).  This position appears at odds with the current regulations' provision that the ALJ need not articulate how it considered evidence from nonmedical sources.  *See* 20 C.F.R. §§ 404.1520c(d), 416.920c(d); *Kennedy v. O'Malley*, No. 22-35866, 2024 WL 242992, at *2 (9th Cir. Jan. 23, 2024); *Fryer v. Kijakazi*, No. 21-36004, 2022 WL 17958630, at *3 n.1 (9th Cir. Dec. 27, 2022).  Regardless, the ALJ's decision here reveals no error in the manner he evaluated the persuasiveness of Ms. Conde's opinion.

ECF No. 14 at 16.  Under the revised regulations,[7] the ALJ must articulate in his decision how persuasive he found all of the medical opinions and prior administrative findings, including, at least, articulating how supported and consistent each opinion was.  20 C.F.R. § 404.1520c(b)-(c).  The ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s). . . ."  20 C.F.R. § 404.1520c(a), which includes that the ALJ does not give special deference or weight to the opinions of treating or examining physicians due to their relationship with the claimant; accordingly, an ALJ no longer has to provide "specific . . . reasons" for crediting the opinion of a medical expert who has not examined or treated the claimant over one who has.  *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (citing *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983)).  Here, the ALJ, albeit relatively briefly, explained that he found Dr. Jackson's opinion about the range of plaintiff's functioning to be persuasive because it was supported by Dr. Jackson's own detailed notes reflecting his thorough review of the medical record before him, and because it was consistent with the other objective medical evidence, including that deriving from plaintiff's physical examinations, the contents of which the ALJ had detailed in the previous two pages of his analysis.  AR 166; *see* AR 164-65.  Under the requirements of the current regulations, plaintiff has not shown that the ALJ erred in the level of specificity he employed when articulating his findings relative to Dr. Jackson's opinion.  *See* 20 C.F.R. § 404.1520c(b)-(c).

Plaintiff next argues that the ALJ's reasons for crediting Dr. Jackson's opinion were not supported by substantial evidence in the record.  ECF No. 14 at 16-17.  Plaintiff's argument is unpersuasive.  The ALJ credited Dr. Jackson's opinion upon finding that it was supported by Dr. Jacksons notes from his review of the record, which had in turn thoroughly addressed the record that had been before him, and because it was consistent with other medical evidence in the record, including the results of physical examinations.  AR 166.  Under current regulations, the ALJ was correct in assessing Dr. Jackson's opinion based on its supportability and consistency.  20 C.F.R.

---

[7] The regulations regarding the evaluation of medical opinion evidence were amended for claims filed on or after March 27, 2017.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5867-68, 5878-79 (Jan. 18, 2017).  Because plaintiff filed his claim after that date, the new regulations apply.  *See* 20 C.F.R. §§ 404.1520c, 416.920c.

§§ 404.1520c(a), 416.920c(a).  The ALJ accurately described the record in finding that Dr. Jackson's opinion had been supported by his own notes, *see* AR 219-20, which themselves had accurately described the medical record before Dr. Jackson at the time.  *See generally* AR 476-563.  The ALJ also was accurate in identifying that the limitations opined by Dr. Jackson were consistent with the results of plaintiff's 2018 post-operative clinical assessments.  AR 166 (citing Ex. 2F at 12, 14); *see* AR 548, 550.  The record, therefore, provides substantial support for the ALJ's crediting of Dr. Jackson's opinions.[8]  *See, e.g., Woods v. Kijakazi*, 32 F.4th 785, 792-94 (9th Cir. 2022); *see generally Thomas*, 278 F.3d at 954.

**b.  Dr. Wolterbeek**

In his RFC analysis, the ALJ found unpersuasive the opinion of Dr. Michael Wolterbeek, who opined in January 2019 that due to the totality of impairments stemming from plaintiff's amputation, plaintiff was unable to work at all until at least March 30, 2019.  AR 166 (citing AR 560-61).  The ALJ found this opinion unpersuasive because it was unsupported by treatment notes and was not consistent with the record as a whole, including physical examination; on the latter point, the ALJ found most relevant plaintiff's "treatment records one year after the claimant's lefty (*sic*) foot amputation, which, as explained above, showed that the claimant was no longer taking medications and was negative on review of systems (see Exhibits 2F/16; 9F/2, 4)."  *Ibid*.

Plaintiff argues that the ALJ's rejection of Dr. Wolterbeek's opinion was unsupported by substantial evidence for several reasons.  As a preliminary matter, however, given the nature of the Dr. Wolterbeek's opinion, the ALJ was not required to consider it nor give any reasons for

---

[8] Plaintiff argues that it is suspect that the ALJ found unpersuasive the medical opinion of nonexaminer Dr. Patty Rowley and persuasive the opinion of nonexaminer Dr. Jackson, arguing that this discrepancy indicates an improper outcome-determined approach by the ALJ.  ECF No. 14 at 17.  Plaintiff does not argue that the ALJ's findings regarding Dr. Rowley constitute error, *see ibid*., and the discrepancy plaintiff identifies in no way impugns the ALJ's findings concerning Dr. Jackson's opinion.  The ALJ found that both opinions were well-supported, but that Dr. Jackson's was consistent with the other objective medical evidence, while Dr. Rowley's was not.  AR 166-67.  There is nothing at all erroneous in this reasoning; in fact, it is what the regulations require of the ALJ in weighing various medical opinions and prior administrative findings to reach a conclusion about a claimant's RFC.  *See* 20 C.F.R. §§ 404.1520c(a), 404.1520c(b)(2), 416.920c(a), 416.920c(b)(2); *see generally Woods*, 32 F.4th at 791-92.

1  disregarding it.  The regulations require an ALJ to "make findings about what the evidence

2  shows," but no such findings, explanations, or analysis are required to explain the ALJ's

3  consideration of "[e]vidence that is inherently neither valuable nor persuasive."  20 C.F.R. §

4  404.1520b(a), (c).  The latter category includes "[s]tatements on issues reserved to the

5  Commissioner," which in turn includes "[s]tatements that you are or are not disabled, blind, able

6  to work, or able to perform regular or continuing work."  *Id*. § 404.1520b(c)(3)(i).  That provision

7  squarely encompasses Dr. Wolterbeek's opinion here, who did not opine on any specific

8  functional abilities or limitations of plaintiff's, *see id*. § 404.1520b(c)(3)(v), but rather opined

9  simply that plaintiff "is . . . [u]nable to work at this time" and he is "unable to complete usual and

10  customary job duties."  AR 560.  Under the regulations, this opinion was inherently not valuable

11  and not persuasive to any aspect of the ALJ's RFC determination and, ergo, the ALJ did not err in

12  giving it no persuasive weight when determining and articulating plaintiff's RFC.  *See* 20 C.F.R.

13  § 404.1520b(c).

14      Moreover, although the ALJ was not required to articulate his reasons for finding Dr.

15  Wolterbeek's opinion unpersuasive, *see* 20 C.F.R. § 404.1520b(c), none of his articulated reasons

16  reflect legal error nor that the RFC lacked substantial supporting evidence.  First, plaintiff argues

17  that Dr. Wolterbeek's opinion should have been found persuasive because it was consistent with

18  the record as a whole, because, per plaintiff, on December 17, 2018, Dr. Wolterbeek assessed

19  plaintiff and found limitations to plaintiff's ankle mobility, pain reported upon palpating or

20  moving the ankle, tightness in the Achilles tendon, and moderate edema.  ECF No. 14 at 17-18

21  (citing AR 550).  Per plaintiff, these facts plainly demonstrate plaintiff's inability to work.  *See*

22  *ibid*.  The court is unpersuaded that these particular symptoms, even considered in combination,

23  support a finding that a claimant was completely unable to work any job until March 2019, as Dr.

24  Wolterbeek had opined, and plaintiff has directed the court to no legal or medical authority

25  supportive of such a deduction.  *See generally* 20 C.F.R. § 404.1520(g) (to be found disabled,

26  claimant's impairments "must prevent [him] from making an adjustment to any other work" or

27  any past relevant work).  Plaintiff has not shown that the ALJ's decision lacked substantial

28  evidence in this particular finding.  *See Biestek*, 587 U.S. at 103.

1        Plaintiff next argues that the ALJ's determination lacks substantial evidence because the

2   ALJ's reasons for finding Dr. Wolterbeek's opinion inconsistent with the record were erroneous;

3   specifically his finding that the opinion was inconsistent with medical record evidence

4   memorializing nothing remarkable in reviews of plaintiff's systems on two particular dates.  ECF

5   No. 14 at 18.  Plaintiff argues that the record does not substantiate the ALJ's assertion about the

6   contents of the record, but plaintiff's argument again is meritless.  In making his finding that Dr.

7   Wolterbeek's opinion was inconsistent with plaintiff's negative systems findings, the ALJ cited

8   pages 2 and 4 of Exhibit 9F in the Administrative Record.  AR 166.  Those pages memorialize

9   Dr. David House's clinical examinations of plaintiff on June 14, 2019 and October 14, 2019, in

10  which he reported almost entirely negative results from a review of all of plaintiff's bodily

11  systems on those dates.  *See* AR 602, 604.  Because the record accords with the ALJ's

12  characterization of it, plaintiff fails to show that the ALJ's decision lacked substantial evidence in

13  this regard.  *See Biestek*, 587 U.S. at 103.

14       Finally, plaintiff argues that the ALJ's determination lacks substantial evidence insofar at

15  the found Dr. Wolterbeek's opinion inconsistent with plaintiff having discontinued using pain

16  medications one year after his amputation.  ECF No. 14 at 18; *see* AR 166.  Plaintiff's argument

17  appears to be that plaintiff's choice to use home remedies, CBD, and cannabis in lieu of

18  prescribed pain medications cannot support an inference that he did not experience debilitating

19  pain that precluded him from working.  *See* ECF No. 14 at 18; *id*. at 15.  The ALJ's reasoning,

20  however, was not erroneous.  In assessing the credibility of a claimant's claim that pain disables

21  him, an ALJ can consider, inter alia, the "[t]ype, dosage, effectiveness . . . of any pain

22  medication" and "[t]reatement, other than medication, for relief of pain."  *Bunnell v. Sullivan*, 947

23  F.2d 341, 346 (9th Cir. 1991) (citing SR 88-13).  It is reasonable for an ALJ to discount a

24  claimant's allegations of the severity or limiting effect of pain based on evidence that the claimant

25  managed his pain without the use of prescription pain medication.  *See, e.g.*, *Parra v. Astrue*, 481

26  F.3d 742, 751 (9th Cir. 2007) (holding that evidence that claimant managed his asserted joint pain

27  with over-the-counter pain medication was "sufficient to discount" the claimant's testimony

28  describing debilitating pain).  On this point, as well, plaintiff has not shown any error in the

1    ALJ's findings relative to Dr. Wolterbeek's medical opinion, nor that the RFC lacks substantial

2    supporting evidence on this basis.  *See Biestek*, 587 U.S. at 103.

3        **c.  Dr. Michael Cosenza**

4        Finally, plaintiff argues the RFC lacks substantial evidence due to the ALJ's

5    unreasonableness in partially crediting the opinion of Dr. Michael R. Cosenza when determining

6    plaintiff's RFC.  ECF No. 14 at 18-19.  This argument, too, fails.

7        In his RFC analysis, the ALJ considered the opinion of Dr. Michael R. Cosenza, who had

8    completed a Medical Source Statement, wherein Dr. Cosenza opined that plaintiff "had an

9    abnormal gait and difficulty walking;" required a cane or other assistive device when engaging in

10   occasional standing/walking; could lift and carry ten pounds occasionally; could stand/walk for

11   three hours; could sit for five hours total in an eight-hour working day; could never twist or climb

12   ladders; could rarely stoop, crouch/squat, or climb stairs; and would on average be absent from

13   work more than four days per month due to impairments or treatment.  AR 166 (citing Ex. 7F).

14   The ALJ found this opinion partially persuasive, crediting some of the claimed limitations as

15   consistent with the other objective evidence in the record, but failing to credit others as

16   unsupported by the doctor's own treatment notes and inconsistent with objective evidence

17   including records of plaintiff's physical examinations.  AR 166 (citing Ex. 2F at 12, 14).

18       First, the plaintiff appears to claim error in the fact that the ALJ found Dr. Cosenza's

19   opinion only partially persuasive.  ECF No. 14 at 18-19.  There was nothing erroneous or

20   logically incongruous in this.  "It is not necessary to agree with everything an expert witness says

21   in order to hold that his testimony contains 'substantial evidence.'"  *Russell v. Bowen*, 856 F.2d

22   81, 83 (9th Cir. 1988) (citing *Vincent v. Heckler,* 739 F.2d 1393 (9th Cir. 1984)).  Here, the ALJ

23   credited Dr. Cosenza's opinion that plaintiff was impaired in his balance, observing that that

24   opinion was consistent with other objective evidence in the record, but found unpersuasive Dr.

25   Cosenza's "limitations to never twisting and rare postural movements," because those limitations

26   were neither supported by the Dr. Cosenza's own treatment notes nor were consistent with the

27   objective evidence including physical examinations.  AR 166 (citing Ex. 2F at 12, 14).  This

28   analysis was not error, but rather reflects the ALJ utilizing the nuanced approach to assessing the

1    evidence before him that the regulations require.  20 C.F.R. §§ 404.1520(e), 404.1520c(a),

2    404.1527(d)(2), 404.1545(a), 404.1546(c); 416.945(a); *see Tommasetti v. Astrue*, 533 F.3d 1035,

3    1041-42 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in

4    the medical evidence."); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007) ("When

5    evaluating the medical opinions of treating and examining physicians, the ALJ has discretion to

6    weigh the value of each of the various reports, to resolve conflicts in the reports, and to determine

7    which reports to credit and which to reject."); *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir.

8    2003) (where "the record contains conflicting medical evidence, the ALJ is charged with

9    determining credibility and resolving the conflict"); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169

10   F.3d 595, 603 (9th Cir. 1999) (holding that ALJ was "responsible for resolving conflicts" and

11   "internal inconsistencies" within doctor's reports); *see generally Vertigan*, 260 F.3d at 1049 ("It

12   is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual

13   functional capacity.").

14       Moreover, the ALJ's reasons for partially discounting Dr. Cosenza's opinion are

15   supported in the record.  The ALJ was correct that Dr. Cosenza's opinion was not supported by

16   his own treatment notes, *see generally* AR 476-724, militating against a finding of

17   persuasiveness.  *See* 20 C.F.R. §§ 404.1520c(a), 404.1520c(b)(2), 416.920c(a), 404.1520c(c)(1),

18   416.920c(b)(2), 416.920c(c)(1); *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022); *see also*

19   *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) ("An ALJ is not required to take medical

20   opinions at face value, but may take into account the quality of the explanation" when

21   determining how persuasive a medical opinion is); *Fidel R.P. v. O'Malley*, 754 F. Supp. 3d 986,

22   992 (N.D. Cal. 2024) (analyzing supportability factor in terms of, inter alia, whether it was

23   supported by the opinion writer's own treatment records or notes).  The ALJ was also correct that

24   Dr. Cosenza's opinion that plaintiff had "limitations to never twisting and rare postural

25   movements" and would be absent from work more than four days a month, *see* ECF No. 14 at 18-

26   19, was inconsistent with other objective medical evidence in the record, including evidence from

27   plaintiff's examinations.  *See* AR 166.  The ALJ was accurate in his observation that plaintiff's

28   November and December 2018 medical records memorialize physical examinations of plaintiff

by Dr. Wolterbeek, wherein he recorded plaintiff presenting no pain on range of motion testing, full strength, and no finding of difficulty walking.  AR 548, 550 (*see* AR 166 (citing same)).  This is a proper basis on which to discount a medical opinion.  *See Woods*, 32 F.4th at 791-92; 20 C.F.R. § 404.1520c(c)(1) ("[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be").  Plaintiff has not demonstrated that the RFC determination lacks substantial evidence because it was based, in part, on the ALJ's partial rejection of aspects of Dr. Cosenza's opinion. *See Ford*, 950 F.3d at 1154.

**V.       Conclusion**

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for summary judgment (ECF No. 14) is denied;

2.  Defendant's cross-motion for summary judgment (ECF No. 17) is granted;

3.  The Clerk of the Court shall enter judgment for defendant and close this case.


Dated: November 10, 2025

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

26